O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HOT TOPIC DATA BREACH LITIGATION<br><br>*THIS DOCUMENT RELATES TO: ALL ACTIONS* | Case No.: 2:24-cv-09215-MEMF-AS<br><br>Consolidated Action<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS [DKT. NOS. 49, 55]** |

Before the Court are two Motions to Dismiss. The first was jointly filed by Defendants Hot Topic, Inc. ("Hot Topic") and Torrid, LLC ("Torrid"). Dkt. No. 49-1. The second was filed by Defendant Robling, Inc. ("Robling"). Dkt. No. 55-1. For the reasons stated below, the Motions are GRANTED IN PART.

# I. Background

## A. Factual Background[1]

This case is a putative class action on behalf of people harmed by Defendants' "unlawful, negligent, and reckless disclosure of the personally identifiable information of millions of their customers." 1AC ¶ 1. The named Plaintiffs are Allison Barber, Anastasia Weatherford, Daniel Garcia, Candace Parra, Alanna Roberson, and Angela Renee Garrett (collectively, "Plaintiffs"). *Id.* ¶¶ 30-112. Of the Plaintiffs, only Parra resides in California. *Id.* ¶ 70.

Plaintiffs seek to represent the following Nationwide Class: "All individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized threat actor as a result of the Data Breach." *Id.* ¶ 223. Plaintiffs also seek to represent the following California Subclass: "All individuals residing in [] California whose PII was accessed and/or acquired by an unauthorized threat actor as a result of the Data Breach." *Id.* ¶ 224.

Defendant Hot Topic is a California corporation with its principal place of business located in City of Industry, California. *Id.* ¶ 113. Hot Topic operates a chain of retail stores under multiple brand names. *Id*. Defendant Torrid is a California limited liability company with its principal place of business located in City of Industry, California. *Id.* ¶ 114. Hot Topic and Torrid are "sister brands" and "merchants of countercultural 'fast fashion' apparel, gifts, and music.'" *Id.* ¶ 2. Defendant Robling is a Delaware corporation with its principal place of business located in Atlanta, Georgia. *Id.* ¶ 114. It is a third-party data analytics provider that provided services to Hot Topic and Torrid.

On October 21, 2024, a hacker known as "Satanic" claimed to have breached Defendants' systems and stole millions of records containing consumer personally identifiable information ("PII") and payment card information ("Data Breach"). *Id.* ¶¶ 5-6. The PII included names, email addresses, home addresses, phone numbers, birthdates, and payment card information, all of which was posted on the dark web. *Id.* ¶¶ 4–6, 9, 15–16. Atlas Privacy ("Atlas") is a neutral analytics firm

---

[1] The following factual allegations are derived from the allegations in Plaintiffs' operative First Amended Complaint, Dkt. No. 43 ("1AC"), unless otherwise indicated. For the purposes of this Order, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations.

that purchased, acquired, viewed, and analyzed the data and confirmed that the stolen information contains email addresses belonging to "54.5 million users, 25 million credit card numbers, 24.8 million names, 24.7 million phone numbers, [and over] 344,000 job titles." *Id.* ¶ 10. The credit cards had been "lightly encrypted," making it possible to decrypt data, including expiration date numbers. *Id.*

Defendant Robling is a retail analytics and cloud data vendor that provides data analysis to retailers, including Hot Topic and Torrid. *Id.* ¶ 3. Robling's systems contained Hot Topic and Torrid's corporate credentials, and Robling's employee computer was infected with malware that compromised over 240 corporate access credentials, including Defendants' credentials. *Id.* ¶¶ 7-8, 12-14. By compromising the corporate credentials, the hackers accessed Defendants' data environment and obtained highly sensitive PII. *Id.* ¶¶ 6, 9-11.

Each Plaintiff alleges they entrusted their PII to Defendants and paid a premium for data security for the products they purchased. *Id.* ¶¶ 33, 47, 60, 73, 86, 100, 286, 292. Plaintiffs claim Defendants failed to maintain adequate data security and provided access credentials to Robling to generate more profits, without ensuring Robling had adequate safeguards in place to protect access to that PII. *Id.* ¶¶ 7–14, 275.

**B. Procedural History**

The 1AC, filed on July 28, 2025, brings the following causes of action against Defendants:[2]

| Claim | Brought by | Brought against |
|---|---|---|
| Negligence | Plaintiffs and the Nationwide Class | All Defendants |
| Breach of implied contract | Plaintiffs and the Nationwide Class | Hot Topic and Torrid |

[2] The Court notes that Hot Topic and Torrid emphasize that this is the Plaintiffs' *fourth* attempt to assert claims against Hot Topic and Torrid, but it is unclear what they are referring to. This is the *first* time that this Court has been called upon to address the alleged defects. As noted below, therefore, Plaintiffs will be granted leave to amend.

| | | |
|---|---|---|
| Invasion of privacy | Plaintiffs and the Nationwide Class, "or, alternatively, Plaintiff Parra and the California Subclass" | All Defendants |
| Violations of the California Consumer Privacy Act ("CCPA), Cal. Civ. Code § 1798.150 | Parra and the California Subclass | All Defendants |
| Violations of the California Consumer Records Act ("CCRA"), Cal. Civ. Code § 1798.80 et seq. | Parra and the California Subclass | All Defendants |
| Violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. | Plaintiffs and the Nationwide Class, "or, alternatively, Plaintiff Parra and the California Subclass" | All Defendants |
| Unjust enrichment | Plaintiffs and the Nationwide Class | All Defendants |
| Declaratory and injunctive relief | Plaintiffs and the Nationwide Class | All Defendants |

*See generally id.*

On September 10, 2025, Defendants Hot Topic and Torrid jointly filed a Motion to Dismiss. Dkt. No. 49-1 ("HT MTD"). On October 17, 2025, Plaintiffs filed their opposition. Dkt. No. 58 ("HT Opp."). On November 7, 2025, Hot Topic and Torrid filed a reply. Dkt. No. 61 ("HT Reply").

On September 17, 2025, Robling filed a Motion to Dismiss. Dkt. No. 55-1 ("Robling MTD"). On October 24, 2025, Plaintiffs filed their opposition. Dkt. No. 59 ("Robling Opp."). On November 7, 2025, Robling filed its reply. Dkt. No. 60 ("Robling Reply").

/ / /

**II. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court may properly dismiss a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "threadbare recitals of the elements of a cause of action." *Id.* at 678. The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**III. Discussion**

Both Motions make two arguments in support of dismissal of the entire case. First, they argue that Plaintiffs lack Article III standing. Second, they argue that the complaint relies on improper group pleading. They then proceed to argue that each of Plaintiffs' claims must be dismissed under Rule 12(b)(6). This Court addresses each argument in turn.

/ / /

/ / /

**A. Plaintiffs have Article III standing to pursue their claims.**

Defendants' Motions argue that Plaintiffs have not met—and cannot meet—the injury in fact requirement for Article III standing. *See* HT Motion at 11–16. To that end, they argue that dismissal with prejudice is warranted. *See* Robling Motion at 8. In opposition to the Motions, Plaintiffs argue that the harm Plaintiffs have faced—"the data breach and subsequent compromising of their PII, including names, emails, addresses, phone numbers, birth dates, and payment card information," *see* HT Opp. at 4—confer standing. They further argue that this case is even more clear on Article III standing than similar data breach cases: "[H]ackers not only posted Plaintiffs' payment card information for sale on the dark web . . . but hackers already disseminated Plaintiffs' PII to at least one third party who purchased, viewed, acquired, and analyzed the data after it was posted for sale." *Id.* For the reasons discussed below, this Court finds that Plaintiffs have standing.

A plaintiff must have Article III standing to bring a claim in federal court. To do so, the plaintiff must demonstrate that (1) it has suffered an injury in fact that is (a) concrete and particularized, (b) actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). A plaintiff "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

"A plaintiff threatened with future injury has standing to sue "if the threatened injury is 'certainly impending,' or if there is a 'substantial risk that the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1025 (9th Cir. 2018) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014)). In the class action context, "a class action plaintiff must 'allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants.'" *Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Plaintiffs whose personal data has been compromised as part of a data breach may have Article III standing to pursue relief. The Ninth Circuit has considered "the sensitivity of the personal information, combined with its theft," to find that "plaintiffs had adequately alleged an injury in fact

supporting standing." *In re Zappos.com, Inc.*, 888 F.3d at 1027 (citing *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010)). But data breach plaintiffs must still demonstrate that they face a "credible threat of real and immediate harm" stemming from the incident. *Krottner*, 628 F.3d at 1143.

Following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the standing analysis requires courts to ascertain "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 424. This "does not require an exact duplicate in American history and tradition." *Id.* And the harm need not be tangible; certain intangible harms, such as disclosure of private information, "can also be concrete." *Id.* Indeed, in the Ninth Circuit, "violations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020). Still, in the wake of *TransUnion*, the Ninth Circuit has commented that "Article III standing can be an uphill battle for data-breach plaintiffs, who must allege a 'concrete harm,' not just an 'asserted risk of future harm.'"[3] *In re Calif. Pizza Kitchen Data Breach Litig.* (*CPK*), 129 F.4th 667, 678 (9th Cir. 2025) (quoting *TransUnion*, 594 U.S. at 437). There, the Court noted that the class's standing "rested on questionable footing—there [was] no evidence that any [plaintiff's] compromised data was misused, and the hacker group is apparently known for not releasing the information to the dark web once it receives its ransom payment." *Id.*

This Court finds that Plaintiffs have made well-pleaded allegations that, taken as true, indicate that they have suffered actual, concrete harm. In particular, the operative Complaint alleges that millions of names, credit card numbers, phone numbers, addresses, birthdates, and email addresses were stolen in the data breach. 1AC ¶ 10. Plaintiffs allege, moreover, that the database was

---

[3] In Reply, Defendants argue that this Court should not rely on cases like *Zappos* for their standing analysis of data breach cases because they predate *TransUnion*, "which expressly held that a risk of harm—such as the potential for future identity theft—does not constitute a concrete harm and therefore is not a sufficient basis for Article III standing. *See* HT Reply 9 n.2. It does appear that *TransUnion*'s holding—"[n]o concrete harm, no standing," 594 U.S. at 442—has given reason to call into question the *Zappos* rule that a data breach plaintiff has standing based on "the risk of future harm they face." 888 F.3d at 1029; *see, e.g.*, *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 875 (N.D. Cal. 2024). To that end, given the uncertain extent to which *Zappos* remains good law, this Court relies on *TransUnion* and more recent Ninth Circuit cases for their articulation of concrete harm. And, because this Court finds that Plaintiffs have sufficiently alleged that they have suffered concrete harms through the theft, sale, and dissemination of their data on the dark web, the *TransUnion* standard is satisfied.

offered for sale, and that it remains available for sale in the dark web. *Id.* ¶ 15. Unlike the plaintiffs in *CPK*, the 1AC here alleges actual misuse of data: Plaintiffs allege that their compromised data was eventually sold to at least one third party, and that the data compromised in the data breach "remains in the hands of . . . cybercriminals who target PII for its value to identity thieves." *Id.* ¶ 18. This, Plaintiffs allege, has manifested in "actual and attempted financial fraud, publication of their data on the dark web, and a surge in phishing calls and spam messages." HT Opp. at 6 (citing 1AC at ¶¶ 18, 37–39, 51–52, 64–65, 77–78, 90–92, 106–08, 147–48). Taken together, these allegations state that Plaintiffs' personal data was not just disclosed; it was affirmatively sold to third parties. Reading these allegations as true, the allegations state a claim for a concrete harm done through a violation of the Plaintiffs' privacy interests.

Defendants make several arguments challenging Plaintiffs' standing.

First, Defendants argue that Plaintiffs do not have standing because their alleged injuries as pleaded do not suffice to confer Article III standing. Robling MTD at 7–8; HT MTD at 12–13. Defendants argue that the Plaintiffs' disclosed data is "not the type of sensitive personal information that creates a risk of identity fraud." HT MTD at 12. They suggest that, because "the credit card information—by Plaintiffs' own admission—is encrypted," "there is no plausible way for bad actors to commit identity theft" with it. *Id.* But the wrongful disclosure of credit card numbers can "still g[i]ve hackers the means to commit fraud or identity theft." *Zappos*, 888 F.3d at 1027. As Plaintiffs note, they have alleged that the data was only lightly encrypted, and that it was possible to decrypt the data.[4] 1AC ¶ 10. And this Court is, at this stage, required to accept as true the factual allegations in the operative complaint. *Park*, 851 F.3d at 918. To that end, it would be premature and improper to conclude that, because the data was encrypted, its wrongful disclosure could not possibly cause Plaintiffs concrete harm.[5]

---

[4] Defendants call this allegation into question, noting that the possibility for decryption of the data was assessed by "a software engineer from a data analytics firm—not a cybersecurity expert." HT Reply at 10. But it would be premature for this Court to interrogate the level of expertise substantiating the allegations in the Complaint at this early stage.

[5] The cases Defendants cite for the opposite conclusion are nonbinding authorities and easily distinguishable. In *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220 (N.D. Cal. 2022), the data breach involved only each plaintiff's "name, driver's license number, and address." *Id.* at 1224. In *Patterson v. Med. Rev. Inst. of Am., LLC*, No. 22-

Second, Hot Topic and Torrid argue that Plaintiffs do not have standing because their alleged injuries are deficiently pleaded; in other words, that Plaintiffs have failed to plausibly allege actual misuse of their data. HT MTD at 16. They argue that the references to actual misuse of data—in the nature of offers for sale and actual sale on the dark web—are "vague," "conclusory," "entirely unsupported by facts," and "boilerplate." *Id.* But the allegations in the 1AC appear sufficient to this Court, and do not merely state legal conclusions about the wrongful conduct that Defendants allegedly committed.

Defendants suggest that the 1AC is lacking because it "does not identify any dates when these events occurred (i.e., how long after the security incident), any locations where they took place, or any facts tying them to the incident at issue." HT MTD at 16. But, as this Court has explained, the MTD appears to sufficiently state claims that, taken as true, plausibly allege liability for Defendants. And Defendants offer no authority for the proposition that a pleading is deficient where it does not identify the exact dates that the data was accessed, purchased, or used to attempt identity theft.[6] Indeed, taking the allegations as true, it is arguably irrelevant whether the attempts to

---

CV-00413, 2022 WL 3702102 (N.D. Cal. Aug. 26, 2022), the defendants submitted undisputed evidence that the only information subject to the data breach was "a single one-page document" containing the plaintiff's name, the date, confirming the plaintiff was an insured patient, and providing a total review time and amount to be billed. *Id.* at *2. *Burns v. Mammoth Media, Inc.*, No. 20-CV-04855, 2021 WL 3500964 (C.D. Cal. Aug. 6, 2021), is similarly inapposite. There, the Court granted defendants' motion to dismiss on a *factual* attack on standing, where the defendant offered evidence disproving the complaint's allegations and plaintiff offered no factual rebuttal. *Id.* at *3. Defendants here have offered no such evidence, undisputed or otherwise. And Defendants do not accurately frame the decision in *Antman v. Uber Techs., Inc.*, No. 15-CV-01175, 2018 WL 2151231 (N.D. Cal. May 10, 2018). Contrary to Defendants' assertions, the Court did not find that "disclosure of basic contact or payment card information does not create a credible risk of identity theft." HT Reply at 10. Indeed, the Court effectively acknowledged the opposite in a separate order: "Without a hack of information such as social security numbers, account numbers, or credit card numbers, there is no obvious, credible risk of identity theft that risks real, immediate injury." *Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015). Without a hack of information such as social security numbers, account numbers, or credit card numbers, there is no obvious, credible risk of identity theft that risks real, immediate injury. This is because "fraud and identity theft are plausible risks with the account numbers and passwords disclosed in *Zappos*, the credit-card numbers and Social Security numbers in *Attias*, or the names, addresses, and Social Security numbers in *Krottner*." *Antman*, 2018 WL 2151231, at *11. Instead, the Court found that the plaintiff lacked standing because the harm he alleged—that someone used his leaked private information to fraudulently apply for a credit card—could not be traced to the defendant's conduct. *Id.* at *10–11. It was undisputed that a Social Security number had been used to apply for the credit card, and the plaintiff did not allege that his Social Security number had been leaked in the defendant's data breach. *Id.* So the defendants' disclosure "did not cause the injury that [the plaintiff] complain[ed] of." *Id.* at *10.

[6] The only case cited in this section of the HT MTD, *Whitaker v. Health Net of Calif., Inc.*, No. CIV S-11-0910, 2012 WL 174961 (E.D. Cal. Jan. 20, 2012), misses the mark. There, the Court found a lack of standing because "plaintiffs

steal Plaintiffs' identity took place one day or one year after the data breach—so long as Plaintiffs can establish the elements of their respective claims (including causation). Defendants also argue that Plaintiffs' allegations on "actual misuse" of data are "entirely unsupported by facts." *Id.* It is not clear whether Defendants intend this to be a factual attack on the 1AC. But if it were, it would not suffice. To convert a motion to dismiss into a factual motion, the moving party must "present[] affidavits or other evidence properly brought before the court." *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1040 (9th Cir. 2003). Defendants have not done so here. Defendants also suggest that the 1AC is deficient because it repeats "boilerplate allegations . . . for each Plaintiff." HT MTD at 16. But Defendants do not explain why this is improper. It is reasonable that the 1AC would use similar language to describe similarly situated parties who were allegedly harmed in the same way and at the same time.

Third, Defendants argue that some of Plaintiffs' other allegations—of lost time, opportunity costs, the diminution in value of their personal data, speculative future credit monitoring expenses, and nominal damages pleadings—do not create standing. This Court has already explained Plaintiffs have standing for reasons independent of these facets of the 1AC, so it need not determine whether those allegations would separately suffice to create standing.

In sum, at this early stage, it appears to this Court that Plaintiffs' 1AC—in particular, its allegations that the Plaintiffs' PII was accessed and stolen in the data breach, and that it was *placed for sale (and actually sold) on the dark web*, already resulting in fraud—sufficiently establishes Article III standing. While Defendants may dispute the allegations in the 1AC, they have not presented a sufficient facial or factual challenge for this Court to find that Plaintiffs lack standing. To that end, dismissal for lack of standing is not warranted.

/ / /

---

d[id] not explain how [the defendant's loss of plaintiffs' data] here has actually harmed them or threatens to harm them, or that third parties have accessed their data." *Id.* at *2. This case is factually distinguishable: The 1AC here *does* allege that data breach caused Plaintiffs actual harm, risk of future harm, and that third parties actually accessed Plaintiffs' data. Nor did the Court find that the details Defendants now seek—dates and locations for the alleged wrongful access of Plaintiffs' information—are required at the pleading stage. For good reason: The parties may well learn these details through the discovery process.

**B. Plaintiffs' Complaint does not improperly rely on group pleading.**

Defendants next argue that the Complaint impermissibly relies on group pleading. HT MTD at 18–19; Robling MTD at 8–9. Plaintiffs, in opposition, note that the allegations of "Defendants'" collective alleged wrongdoing sufficiently give each Defendant notice of the allegations against them. HT Opp. at 10. For the reasons below, this Court finds that the Complaint's use of group pleading is not impermissible, and that sufficient specific allegations exist to give each Defendant due notice of the claims against them.

A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (quoting *Twombly*, 550 U.S. at 555).

Critically, group pleading is not impermissible per se. "There is no flaw in a pleading," as Plaintiffs note, "where collective allegations . . . describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct," so long as the plaintiff has identified the role of each defendant in the alleged wrongful conduct. *U.S. ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see also U.S. ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (noting that "a good claim against one defendant does not become inadequate simply because a co-defendant was alleged to have committed the same wrongful acts").

Here, this Court finds that the 1AC is sufficiently clear as to the relationship between the three Defendants, 1AC ¶¶ 2–4, and as to the specific wrongful conduct that each individual Defendant is accused of committing. *See, e.g.*, *id.* ¶ 12–14, 22, 134–38, 275. Indeed, the 1AC names each individual Defendant dozens of times. *See generally id.* To that end, pursuant to Rule 8, this Court finds that the 1AC sufficiently gives each Defendant notice of the allegations against them.

Hot Topic and Torrid's argument to the contrary—that Plaintiffs improperly conflated Hot Topic and Torrid in the 1AC—is not persuasive. The 1AC alleges that Hot Topic and Torrid are affiliated sister brands, that they both contracted with Robling, and that both had customer data

released in the data breach. 1AC ¶¶ 2–5. It alleges that Hot Topic and Torrid collected similar kinds of customer data—names, emails, addresses, phone numbers, birthdates, and payment details. *Id.* ¶ 6–7. And it alleges that "Hot Topic and Torrid could and should have better monitored their systems to detect unusual activity or activity associated with unauthorized access." *Id.* ¶ 13. To that end, taking the 1AC's allegations as true, it appears that Hot Topic and Torrid were similarly situated for the purposes of this action. *Swoben*, therefore, is instructive: As Hot Topic and Torrid are alleged to be similarly situated and liable for similar wrongful conduct, the 1AC's collective allegations are not improper. Hot Topic and Torrid argue that they "had different practices and knowledge regarding the alleged breach, and likely collected and stored different data about different people." HT MTD at 18. Even if true, it does not necessarily follow that dismissal this point is the proper outcome. Rather, Hot Topic and Torrid may make this argument as appropriate at the summary judgment stage or at trial, based upon the evidence produced in discovery.

As for Robling, its MTD also argues that "Plaintiffs fail to assert any specific allegations as to each Defendant," and that the vast majority of the Complaint improperly groups Defendants without distinguishing the specific acts or knowledge of each Defendant individually." *See* Robling MTD at 8. This Court has already explained that Plaintiffs *have* adequately pleaded that Hot Topic and Torrid were similarly situated. And, for similar reasons, Plaintiffs' use of group pleading is appropriate as it relates to Robling. Robling's relationship to the actions alleged in the 1AC is closely related to that of Hot Topic and Torrid: Per the 1AC, Robling maintains and analyzes customer data for Hot Topic and Torrid. 1AC ¶ 3. And "Robling, acting as Hot Topic's and Torrid's vendor, failed to employ basic security measures, including robust endpoint protection, employee phishing detection, and/or MFA." *Id.* ¶ 14. As such, Plaintiffs allege, "Robling's conduct directly contributed to the Data Breach, as its failure to secure employee endpoints, manage privileged access, and otherwise educate employees on data security created the vulnerability that allowed attackers to exfiltrate millions of records in the Data Breach." *Id.* Plaintiffs also make individual allegations as to each relevant defendant related to several of their causes of action. *See id.* ¶¶ 246–50, 284–99, 304. And, at times that Plaintiffs do not specifically name each Defendant, Plaintiffs make clear that "each Defendant" allegedly participated in wrongful conduct. *See* ¶ 327–28. To that

end, Plaintiffs have made clear what the alleged relationship is between Robling and the other defendants, and they have been sufficiently clear as to the alleged wrongful actions of each defendant.

Thus, to the extent that the 1AC relies on group pleading, this Court finds that it does not impermissibly deprive each Defendant of fair notice on the allegations against them. The Motion on this basis is therefore denied.

**C. Plaintiffs' complaints under California law are properly pleaded.**

Hot Topic and Torrid next argue that the non-California Plaintiffs' claims under the CCPA, CCRA, and invasion of privacy law must all be dismissed. *See* HT MTD at 19. They argue that "[o]nly California residents may bring California constitutional invasion of privacy, CCPA, and CCRA claims." *Id.* In response, Plaintiffs make two arguments: CCPA and CCRA claims are only brought "on behalf of California Plaintiff Parra and the California Subclass," *see* HT Opp. at 11, and that the invasion of privacy claim is brought under both California constitutional and California common law, meaning that non-California plaintiffs may still pursue the claim, *see id.* In Reply, Hot Topic and Torrid argue that, now that Plaintiffs have clarified that the CCPA and CCRA claims are only brought on behalf of the California plaintiffs, the CCPA and CCRA claims brought by non-California plaintiffs must be dismissed with prejudice. HT Reply at 15 n.9. And they argue that "Defendants also did not move to dismiss on the grounds that only California residents could bring California constitutional invasion of privacy claims." *Id.* at 15 n.10. For the reasons below, Defendants' arguments are unavailing.

Upon review of the operative 1AC, it appears to this Court that the CCPA and CCRA claims are brought only by the putative California subclass and by California Plaintiff Parra. The 1AC clearly states that Count IV, brought "Violations of the California Consumer Privacy Act," is brought only "*On Behalf of Plaintiff Parra and the California Subclass* Against All Defendants." *See* 1AC at 64 (emphasis added). So, too, for Count V, for "Violations of the California Consumer Records Act," brought only "*On Behalf of Plaintiff Parra and the California Subclass* Against All Defendants." *See id.* at 67 (emphasis added). To that end, this Court is not persuaded by Hot Topic

and Torrid's argument that Plaintiffs attempted to bring CCPA or CCRA claims on behalf of anyone who is not a California resident. So there are no CCPA or CCRA claims on behalf of non-California plaintiffs for this Court to dismiss, as the Reply asks this Court to do. HT Reply at 15 n.9.

As for the invasion of privacy claim, the 1AC is clear that both the California Constitution and California common tort law (for "intrusion into private affairs") serve as the basis for the invasion of privacy claims brought by all Plaintiffs. *See* 1AC ¶¶ 302–23. The HT MTD, however, appears to assume that the invasion of privacy claims must fail necessarily because the California Constitution does not protect non-California plaintiffs. *See* HT MTD at 11. And neither the HT MTD nor the Reply argues that non-California plaintiffs may not bring an invasion of privacy claim premised under California tort law. To that end, Hot Topic and Torrid have not shown why the invasion of privacy claims of non-California plaintiffs must necessarily fail.

In sum, because only California plaintiffs are bringing CCPA and CCRA claims, and because Defendants have not demonstrated that non-California plaintiffs' claims of invasion of privacy under common law must fail for extraterritoriality, Plaintiffs' complaints under California law are properly pleaded and are not dismissed on these grounds.

### D. Under Rule 12(b)(6), Plaintiffs have stated a claim for some of their proposed theories of liability.

Defendants lastly argue that, under Rule 12(b)(6), Plaintiffs have not sufficiently stated any claims to relief that are plausible on their face. The Court addresses these arguments on a claim-by-claim basis.

#### i. <u>Negligence</u>

"The elements of a negligence cause of action are (1) the existence of a duty, (2) a breach of that duty, (3) injury to the plaintiff caused by the defendant's breach, and (4) actual damages." *Romero v. L.A. Rams*, 308 Cal. Rptr. 3d 431, 437 (Cal. Ct. App. 2023).

##### *1. The claim against Hot Topic and Torrid is sufficiently stated.*

Hot Topic and Torrid argue that the claim against them for negligence fails for two reasons. The first is that Plaintiffs cannot establish standing, and accordingly, that the injuries Plaintiffs allege

are "not, in fact, actual damages or injury." HT MTD at 20. Because this Court has already explained why Plaintiffs' allegations of actual theft and sale of their data—along with dissemination to third parties—suffice for standing purposes, this Court does not repeat its ruling here.

The second is that Hot Topic and Torrid argue that "Plaintiffs fail to allege that Defendants' actions ***caused*** personal information associated with them to be compromised." *Id.* at 21. They argue that, because Plaintiffs allege that the security incident resulted from a Robling employee's computer being infected by malware, it necessarily follows that Plaintiffs harm was "not [due to] any failure on [Hot Topic and Torrid's] part." *Id.* In their opposition, Plaintiffs argue that their allegations do plead that the data breach was a "substantial factor" in bringing about the alleged injuries, without which the injury would not have occurred.[7] HT Opp. at 13. They also note that they allege that Hot Topic and Torrid had (and breached) an independent duty to confirm that Robling employed adequate data security before they provided Robling Plaintiffs' personal data. *Id.*

As the California Supreme Court has instructed:

> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

*Ortega v. Kmart Corp.*, 36 P.3d 11, 18 (Cal. 2001). And, when a plaintiff sues a defendant for the negligent failure to take precautions that would have prevented another's wrongful conduct, to prevail, the plaintiff must "prove it was 'more probable than not' that additional security precautions would have prevented the attack." *Saelzler v. Adv. Grp. 400*, 23 P.3d 1143, 1151 (Cal. 2001) (quoting *Leslie G. v. Perry & Assocs.*, 50 Cal. Rptr. 2d 472, 488 (Cal. Ct. App. 1996)).

As Defendants attack the negligence claim solely on causation grounds, this Court focuses its inquiry on that question. The allegations in the 1AC, if proven true, plausibly support a finding that Hot Topic and Torrid's actions or omissions were a cause of the breach. The fact that Plaintiffs alleged a malware attack on Robling does mean that Robling's negligence is necessarily the only one

---

[7] Plaintiffs most heavily rely on *Stollenwerk v. Tri-W. Health Care All.*, 254 F. App'x 664 (9th Cir. 2007), in their argument on causation. Because this is an unpublished Ninth Circuit case—and because it applies Arizona law—this Court does not rely upon it.

at play. Rather, it is a "well established" principle of California law that "[a] defendant need be a substantial factor, but not the *only* factor," that resulted in a plaintiff's harm. *TRC Operating Co. v. Chevron USA, Inc.*, 322 Cal. Rptr. 3d 353, 398 (Cal. Ct. App. 2024).

And Plaintiffs allege that "Hot Topic and Torrid breached their duties" by "failing to exercise reasonable oversight in the selection of Robling to handle Plaintiffs' and Class Members' PII." 1AC ¶ 275. "Such reasonable oversight would have revealed that Robling lacked industry standard data security safeguards necessary to adequately protect Plaintiffs' and Class Members' PII." *Id.*; *see also id.* ¶¶ 12–13. If Plaintiffs prove these allegations true, they would support a finding of causation (and therefore liability) for Hot Topic and Torrid; the failure to exercise reasonable oversight in the selection of Robling, resulting in the lacking protection of customers' personal data, could be a substantial factor in the ensuing data breach and harm.

To that end, because Plaintiffs have sufficiently alleged claims that—if true—would support a finding of causation between Hot Topic and Torrid's actions and the harm that ensued, this Court does not dismiss the negligence claim.

*2. The claim against Robling is sufficiently stated.*

Robling separately argues that the negligence claim against it must fail for two similar reasons. First, it argues that Plaintiffs have not alleged actual damages or injury as required to plead a negligence claim; this Court does not restate its discussion here on why Plaintiffs have sufficiently alleged actual injuries. Second, Robling argues that Plaintiffs have not stated facts that support the conclusion that the data breach incident occurred because of a malware attack on a Robling employee's computer. Robling MTD at 9.

Robling takes the opposite approach to Hot Topic and Torrid. Whereas Hot Topic and Torrid argue that Plaintiffs' negligence claims against them must fail because *Robling's* negligence was the actual cause of Plaintiffs' harm, Robling argues that Plaintiffs' negligence claims must fail because "Plaintiffs concede that the Incident impacted *Hot Topic* and *Torrid's* accounts with cloud storage providers, that the compromised login credentials belonged to *Hot Topic*, and that *Hot Topic* was storing the information using its own outdated security protocols." Robling MTD at 9 (emphasis added) (citations omitted). But, as this Court explains above, neither motion accounts for the reality

that multiple tortfeasors can be liable for their role in causing one harm. And Plaintiffs have alleged facts that, taken together and assuming they are proven true, support a finding of liability on Robling's part. They have alleged that the data breach arose because a hacker installed password-stealing malware on a Robling employee's computer, 1AC ¶ 132, and that the credentials to Hot Topic and Torrid's cloud data passwords were stolen "due to Robling's failure to implement robust endpoint protection, anti-phishing protocols, and other standard security safeguards," such as the failure to use multi-factor authentication. *Id.* ¶¶ 135–36.

These allegations, if proven true, would support a finding that Robling is liable for negligence as a substantial factor in causing Plaintiffs' harm. Their failure to take appropriate care through the implementation of additional security protocols could plausibly be found to have caused the data breach. For that reason, this Court does not dismiss Plaintiffs' claim for negligence against Robling.

ii. <u>Plaintiffs have stated a claim for breach of implied contract against Hot Topic and Torrid.</u>

Hot Topic and Torrid next argue that Plaintiffs have failed to allege their claim for breach of implied contract. HT MTD at 21–22. Their argument is twofold.

First, they contend that Plaintiffs' allegations do not suffice to properly elaborate upon the nature and scope of the implied contract in question. *Id.* at 22 (citing *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 982–83 (N.D. Cal. 2016)). Plaintiffs note in opposition that, in *Anthem*, "the plaintiffs did not provide any details regarding the terms of the implied contract other than" a conclusory allegation that an implied contract existed because Anthem "demand[ed] and accept[ed]" plaintiffs' PII. Opp. at 14. The Court in *Anthem*, finding that Plaintiffs had not elaborated upon the nature and scope of the implied contract in the pleadings, instructed Plaintiffs to "more specifically explain the scope and nature of their implied contracts with the Anthem Defendants." *In re Anthem*, 162 F. Supp. 3d at 983. And, as Plaintiffs argue, it appears that the 1AC in this case offers substantial details as to both the nature and the scope of the implied contracts. Plaintiffs allege:

> 284. Hot Topic and Torrid solicited, offered, and invited Plaintiffs and Class Members to provide their PII as part of Defendants' regular business practices. Plaintiffs and

> Class Members accepted Hot Topic's and Torrid's offers and provided their PII to Hot Topic and Torrid.
>
> 285. Hot Topic and Torrid accepted possession of Plaintiffs' and Class Members' PII for the purpose of providing goods and services to Plaintiffs and Class Members.
>
> 286. Plaintiffs and the Class purchased products and entrusted their PII to Hot Topic and Torrid. In so doing, Plaintiffs and the Class entered into implied contracts with Hot Topic and Torrid by which Hot Topic and Torrid agreed to safeguard and protect their information, to keep their information secure and confidential, and to timely and accurately notify Plaintiffs and the Class if their data had been compromised or stolen.
>
> 287. In entering into such implied contracts, Plaintiffs and Class Members reasonably believed and expected that Hot Topic's and Torrid's data security practices complied with relevant laws and regulations (including FTC guidelines on data security) and were consistent with industry standards.
>
> 288. Implicit in the agreement between Hot Topic and Torrid and Plaintiffs and Class Members was Defendants' obligation to (a) use such PII for business purposes only; (b) take reasonable steps to safeguard that PII; (c) prevent unauthorized disclosures of the PII; (d) provide Plaintiffs and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII; (e) reasonably safeguard and protect the PII of Plaintiffs and Class Members from unauthorized disclosure; and (f) retain the PII under conditions that kept such information secure and confidential. The mutual understanding and intent of Plaintiffs and Class Members on the one hand, and Hot Topic and Torrid, on the other, is demonstrated by their conduct and course of dealing.

1AC ¶¶ 286–88. Contra *Anthem*, Plaintiffs here have alleged meaningful details as to when the parties entered implied contracts and what those implied contracts obliged Defendants to do. And, under California law, "whether an implied contract exists is usually a question of fact for the trial court." *Unilab Corp. v. Angeles-IPA*, 198 Cal. Rptr. 3d 211, 222 (Cal. Ct. App. 2016). To that end, because Plaintiffs' allegations (if proven true) could support the finding that an implied contract existed, this Court finds the allegations sufficient as they related to the implied contract between Plaintiffs, Hot Topic, and Torrid.

Second, Defendants note a series of district court findings that "have specifically found that consideration is required for an implied contract claim regarding data security." *Ortiz v. Perkins & Co.*, No. 22-CV-03506, 2022 WL 16637993, at *6 (N.D. Cal. Nov. 2, 2022). Plaintiffs do not contest that consideration is a required component of their implied contract claim. *See* HT Opp. at 14.

Instead, they argue that Plaintiffs *have* "allege[d] the specific consideration (money, including a premium for data security, and PII) they provided in exchange for the retail products with data security Defendants promised but failed to provide." *Id.* Plaintiffs cite a series of allegations in the 1AC as support for this proposition—paragraphs 32, 33, 46, 47, 59, 60, 72, 73, 85, 86, 99, 100, 283, and 292. These portions of the 1AC allege that Plaintiffs were required to entrust their PII to Hot Topic and Torrid to purchase retail products at the two companies, and that the named Plaintiffs "understood Hot Topic and Torrid charged a premium to provide security to protect [their] PII." 1AC ¶ 100. Taking these allegations as true, it appears to this Court that, if a fact-finder found that an implied contract was created, that consideration was exchanged: Plaintiffs, to their detriment, conferred upon Defendants something of value (here, the PII that Defendants requested as a condition of entering a sales relationship, as well as the value of the transaction that Plaintiffs entered into with Defendants), and understood themselves to be entitled to reasonable security of that PII in exchange. *Cf. Castillo v. Seagate Tech., LLC*, Case No. 16-CV-1958, 2016 WL 9280242 (Sep. 14, 2016) ("The [plaintiffs] provided their personal information for tax purposes and to receive employment and benefits, with the understanding that [defendant], while it held the information, would take adequate measures to protect it.").

In sum, this Court finds that Plaintiffs' allegations surrounding the nature and scope of the implied contract, as well as allegations of consideration, suffice to support their claim at the pleadings stage. To that end, Hot Topic and Torrid's Motion on this basis is denied.

iii. Plaintiffs have not stated a claim for invasion of privacy.

Plaintiffs bring two related claims for the invasion of their privacy: as a violation of California's constitutional right to privacy, and a violation of the California tort of intrusion into private seclusion. 1AC ¶¶ 305–06. "Because of the similarity of the [constitutional and common-law] tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook*, 956 F.3d at 601.

Hot Topic and Torrid argue that these claims fail because "Plaintiffs do not allege Defendants took *affirmative* acts to invade their privacy." HT MTD at 23. Alternatively, they argue that "Defendants' actions do not rise to the level of "highly offensive." *Id.* In response, Plaintiffs argue that they have identified "intentional conduct and affirmative acts taken by Defendants," and alleged that Defendants "intentionally failed to implement basic safeguards such as MFA, proper encryption, and network segmentation." HT Opp. at 14–15.

Neither of the parties cites binding law in support of their position on whether a third party's intentional conduct can serve as the basis for liability for invasion of privacy. But they point this Court to a divided set of trial court opinions on the matter.[8] *Compare Damner v. Facebook Inc.*, 2020 WL 7862706, at *6 (N.D. Cal. Dec. 31, 2020) (finding "no authority that suggests that failure to take adequate measures to protect against the intentional intrusion of a third party satisfies the first element of a claim for intrusion on seclusion") *and In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 646 (N.D. Cal. 2024) (dismissing a claim for intrusion upon seclusion where complaint alleged that the defendant had "acted knowingly and in reckless disregard of Plaintiffs' privacy rights" (internal quotation marks omitted)) *with In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (finding Plaintiffs adequately alleged invasion of privacy claim where Defendants allegedly "failed to take adequate and reasonable measures" to protect data systems). This Court therefore has considered the authorities, but is not bound to follow either approach: It thus considers whether the 1AC states claims plausible on their face, applying the appropriate legal standard for the claim that Plaintiffs have brought. *Ashcroft*, 556 U.S. at 678.

Applying that test, Plaintiffs' allegations do not sufficiently support the claims of constitutional invasion of privacy or common law intrusion upon seclusion. While Plaintiffs have alleged "intentional conduct and affirmative acts" on Defendants' parts, these allegations (as related to the privacy claims) miss the mark: At no point to Plaintiffs allege that *Defendants themselves* intruded on their privacy in a highly offensive way. At most, Plaintiffs allege that Defendants'

---

[8] Plaintiffs also rely on *Jimenez v. OE Fed. Credit Union*, No. 24-CV-02746, 2025 WL 2402137 (N.D. Cal. Aug. 19, 2025), but that case turned on a different question: whether the defendant's alleged cybersecurity practices were an "egregious breach of social norms," not whether they were affirmative intrusions. *Id.* at *5.

failure to adequately protect Plaintiffs' data allowed a *third party* to intrude on Plaintiffs' privacy in a highly offensive way. And Plaintiffs have offered no binding authority for the proposition that the third parties' conduct is imputable to Defendants as though they themselves invaded upon Plaintiffs' privacy. Because a plain reading of the 1AC shows that the allegations do not sufficiently state a claim for constitutional invasion of privacy or common law intrusion upon seclusion, Plaintiffs have failed to state those claims.

Because this Court finds no allegations in the 1AC to support the proposition that Defendants themselves intruded upon Plaintiffs' privacy, the Motions as to this claim are granted. This Court does not reach the question of whether Defendants' actions were highly offensive.

iv. <u>Plaintiffs have not stated a claim for violations of the California Consumer Privacy Act.</u>

Hot Topic and Torrid next argue that Plaintiffs' CCPA claim fails for three reasons. First, they argue that "Plaintiffs plead no facts showing that Defendants failed to implement reasonable security procedures and practices." HT Opp. at 24. Second, they argue that Plaintiffs failed to "identify any specific conduct by *either* [*Hot Topic or Torrid*] that would constitute a breach of their duty to implement and maintain reasonable security procedures and practices," again pointing to the allegation that a malware attack on a Robling computer resulted in the data breach. *Id.* This Court has already explained that Plaintiffs' 1AC sufficiently alleged that Defendants failed to implement reasonable security procedures. It has also explained that whether the data breach was facilitated through a malware attack on Robling does not inherently absolve Defendants of liability, and that Plaintiffs' allegations against Hot Topic and Torrid plausibly state that their lack of implementation of security procedures was a cause, if not the sole cause, of the data breach. This Court does not repeat that discussion here.

Third, Hot Topic and Torrid argue that Plaintiffs "cannot allege that 'personal information' as defined by the CCPA was exfiltrated, stolen, or disclosed." *Id.* This is because the CCPA states:

> "Personal information" means either of the following:
>
> (A) An individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, *when either the name or the data elements are not encrypted or redacted*:

> (i) Social security number.
>
> (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual.
>
> (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.
>
> (iv) Medical information.
>
> (v) Health insurance information.
>
> (vi) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual. Unique biometric data does not include a physical or digital photograph, unless used or stored for facial recognition purposes.
>
> (vii) Genetic data.
>
> (B) A username or email address in combination with a password or security question and answer that would permit access to an online account.

Cal. Civ. Code § 1798.8.5(d)(1) (emphasis added). It appears that the only arguable personal information that the 1AC states was subject to the data breach are 25 million credit card numbers, which had been "lightly encrypted." 1AC ¶ 10. Defendants argue that, because the credit card numbers were not alleged to be leaked alongside "any required security code, access code, or password that would permit access to an individual's financial account," and because—by the 1AC's own admission—the data was encrypted, Plaintiffs' claim fails as a matter of law. Plaintiffs, in opposition, argue that Defendants misconstrue Plaintiffs allegations: Plaintiffs state that, because they allege "that the encryption was so light as to be tantamount to no encryption at all," the question of whether the data was actually encrypted is best left to the jury. HT Opp. at 16.

Because both requirements in the CCPA's definition of personal information are not met, for two independent reasons, Plaintiffs have not sufficiently stated this claim.

First, the 1AC's admission that the data was encrypted effectively bars it from falling within the ambit of the CCPA. As a threshold matter, it appears that all parties agree that the data in question was encrypted. Plaintiffs' argument as to that the data was so lightly encrypted that it should count as unencrypted is not persuasive; the CCPA's statutory schema does not appear to leave room for a jury to make a case-by-case determination that only some encryption counts as enough encryption. Instead, the CCPA sets up a clear binary: either data is encrypted, or it is not.

Because the 1AC admits that the data was encrypted, the strength and quality of that encryption is beside the point. Plaintiffs' requests for this Court to deny the Motions because their allegations should be taken as true and in the light most favorable to Plaintiffs, HT Opp. at 16, are unavailing: Plaintiffs are effectively asking this Court to take one of the 1AC's allegations, that the data was encrypted, as *not* true. Because this Court finds no support in the law for it to do so, and because the CCPA's definitions do not embrace the ambiguity that Plaintiffs propose, Plaintiffs' claim fails.

And second, Plaintiffs do not respond to Defendants' arguments that—even if this Court were inclined to find that the question of encryption is a determination for the jury—the 1AC definitionally falls short because it does not allege that credit card information was released "in combination with any required security code, access code, or password that would permit access to an individual's financial account." Cal. Civ. Code § 1798.8.5(d)(1)(A)(3). Nor does this Court find any support in the Complaint for that the data breach did indeed release security codes for the credit card numbers that were impacted.

Because the 1AC, even with allegations taken as true and in the light most favorable to the Plaintiff, fails to state a claim under the CCPA's ambit, the Motions as to this claim are granted. As it is not clear that additional facts could not be pleaded in order to correct Plaintiffs' pleading, dismissal is with leave to amend. This Court does not reach Defendants' remaining arguments on whether statutory damages under this claim would be appropriate.

<u>v. Plaintiffs have not stated a claim for violations of the CCRA.</u>

The CCRA requires businesses to disclose qualifying security incidents to California residents. Cal. Civ. Code § 1798.82. When a security interest qualifies, and disclosure is required, the disclosure must be made without unreasonable delay. *Id.*

Defendants argue that Plaintiffs' CCRA claim fails for two main reasons. First, they argue that Plaintiffs cannot establish that notice was required at all, because—as the CCPA and the CCRA define personal information identically—Plaintiffs have not alleged that any "personal information" was disclosed that implicates the CCRA. HT MTD at 28. Second, they argue that Plaintiffs have not stated facts that show that an alleged delay in notification of the data breach caused Plaintiffs harm. *Id.*

The parties agree that the CCPA and the CCRA define personal information identically. Cal. Civ. Code § 1798.82(h); *see also* HT MTD at 17 ("Plaintiffs agree with Defendants that the CCRA and CCPA use the same standard for identifying 'personal information' . . . . "). To that end, Plaintiffs repeat their argument, discussed in the preceding section, as to why the allegedly lightly encrypted data implicated in the breach satisfies the statutory requirements. This Court has already explained that, when the parties agree that the data in question was encrypted, the strength and effectiveness of that encryption is—for the purposes of the CCRA and the CCPA—beside the point. For that reason, the 1AC fails to state a claim upon which relief could be granted as to the CCRA claim.

Because the CCRA defines personal information in a way that includes none of the data alleged to be impacted in the data breach at issue here, the Motion as to the CCRA claim is granted. Dismissal is with leave to amend, as there is a possibility that an amended pleading would allow Plaintiffs to cure the shortcomings with their pleading of the CCRA claim.

vi. Plaintiffs have stated a claim for violations of California's Unfair Competition Law.

In support of their motions to dismiss Plaintiffs' UCL claim, Defendants make three arguments. First, Hot Topic and Torrid argue that Plaintiffs lack standing under the UCL; second, that the claim should be dismissed because an adequate remedy at law exists. HT MTD at 28–29. Third, Hot Topic and Torrid—and, separately, Robling—argue that Plaintiffs' allegations do not meet the UCL's three prongs (unlawful, unfair, or fraudulent conduct) because their pleadings lack particularity. *Id.* at 30; Robling MTD at 11–12. For the reasons below, this Court finds that Plaintiffs have standing, that they have sufficiently alleged that they may qualify for injunctive relief, and that their allegations (if proven true) support liability for all Defendants under the UCL. For those reasons, the Motions as to the UCL claims against all Defendants are denied.

*1. Plaintiffs have plausibly alleged standing under the UCL.*

As a threshold matter, this Court must consider whether Plaintiffs have plausibly alleged standing. To sustain a UCL claim, "a plaintiff now must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (Cal. 2011). "There are innumerable ways

in which economic injury from unfair competition may be shown." *Id.* "A plaintiff may" qualify, for example, where they "surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have." *Id.* at 885–86. On this point, Hot Topic and Torrid's arguments largely repeat their arguments on standing. They allege that the Plaintiffs have not "alleged to have lost money *as a result of* the purported security incident." HT MTD at 30. They argue that, considering Plaintiffs' loss of their data, and the "time and money [they] spent to monitor and repair [their] credit," Plaintiffs' alleged injuries fall short of the economic-injury requirement under the UCL. But, as Plaintiffs respond, they have sufficiently alleged that they understood themselves to be bargaining for a transaction that involved commercially reasonable security practices. *See* 1AC ¶ 221 ("Furthermore, Defendants' poor data security practices deprived Plaintiffs . . . of the benefit of their bargain. When agreeing to pay Defendants . . . , Plaintiffs and other reasonable consumers understood and expected that they were, in part, paying for . . . necessary data security to protect their PII."); *id.* ¶ 366. To the extent that Plaintiffs allege that they acquired less than they otherwise would have in the transactions between themselves and Hot Topic and/or Torrid, *see* HT Opp at 18, this Court finds that this allegation—if proven true—supports standing to bring a UCL claim. To that end, Plaintiffs have sufficiently alleged standing.

*2. Plaintiffs have plausibly alleged that injunctive relief under the UCL is appropriate.*

Next, this Court must determine whether Plaintiffs qualify to bring a UCL claim for injunctive relief. Defendants argue that Plaintiffs have an adequate remedy at law, and can recover monetary damages for the harm that they have suffered—because this is sufficient, Defendants argue that the UCL claim for injunctive relief is precluded. In support of this argument, Hot Topic and Torrid draw upon the principle that "[a] plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available." HT MTD at 30 (collecting cases). Plaintiffs agree with this principle, but argue that they have sufficiently alleged the inadequacy of their remedies at law, and that adjudicating the adequacy of Plaintiffs' remedies at law is best resolved at the summary judgment stage. HT Opp. at 19.

Plaintiffs' citation to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), is instructive. There, the Ninth Circuit held that the trial court did not err in dismissing Plaintiff's UCL claims, citing that the operative complaint did not allege that Plaintiff lacked an adequate legal remedy. *Id.* at 844. The Court concluded that "nothing in the record support[ed] th[e] conclusion" that "the same amount of money for the exact same harm [wa]s inadequate or incomplete." *Id.* In this case, by contrast, the 1AC *does* allege that Plaintiffs lack an adequate remedy at law. It states that, if injunctive relief is not issued, Plaintiffs and Class Members' PII remains at risk, and no other adequate remedy at law exists. 1AC ¶¶ 368–70. To that end, this Court finds that Plaintiffs have sufficiently alleged, particularly given the early stage of this lawsuit, that monetary remedies available at law are inadequate.

*3. Plaintiffs have sufficiently alleged unfair and unlawful conduct, but not fraudulent conduct.*

Finally, this Court turns to Defendants' contention that the UCL claims must fail because Plaintiffs have not sufficiently stated that Defendants' conduct violates the unlawful, unfair, or fraudulent prongs. For the reasons below, the UCL claim is sufficiently stated.

As a threshold matter, the parties disagree over whether the Rule 9(b) heightened pleading standard applies to all the UCL claims, as Defendants suggest, or only to those brought under the fraudulent prong of the UCL, as Plaintiffs argue. *See* HT Opp. at 21 n.4; HT Reply at 24. "A consumer's burden of pleading causation in a UCL action should hinge on the nature of the alleged wrongdoing rather than the specific prong of the UCL the consumer invokes." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 694 (Cal. Ct. App. 2010). To that end, the Ninth Circuit has upheld the application of the fraud pleading requirements even to UCL claims brought under the unfair or unlawful prong. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). So if a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," the claim is "grounded in fraud . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). But, "in a case where fraud is not an essential element of a

claim, only allegations . . . of fraudulent conduct must satisfy" the 9(b) heightened pleading requirement." *Id.* at 1104.

To that end, this Court considers whether the claim's factual basis sounds in fraud—not, as Plaintiffs propose, merely which of the three prongs the claim is brought under. It performs this analysis below.

a. Unlawful prong

First, the UCL claim for unlawful activity—against Hot Topic, Torrid, and Robling—is sufficiently stated. The 1AC alleges that "Defendants violated the unlawful prong of the UCL by violating, inter alia, the CCPA, CCRA, the Gramm-Leach-Bliley Act ("GLBA"), and FTC Act as alleged [in the 1AC]." 1AC ¶ 358.

First, the CCPA and CCRA claims are brought only by the California Subclass. *See* 1AC at 64, 67. To that end, they do not serve as the basis for a UCL claim by the Plaintiffs who are not part of the California Subclass. Moreover, as this Court has already explained above, *see* Sections III(D)(iv)–(v), *supra*—Plaintiffs have failed to state a claim under these theories because the PII they allege was leaked, as a matter of law, does not fall within the CCPA or the CCRA. So a UCL claim on the basis that Defendants unlawfully violated the CCPA and CCRA has not been sufficiently stated.

Plaintiffs' other arguments that they make in support of this prong of the UCL are that Defendants violated the GLBA and the FTC Act. The 1AC states that "Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and failing to comply with applicable industry standards, as described in detail herein." *Id.* ¶ 263. And it states that Defendants violated the GLBA, 15 U.S.C. §§ 6801 *et seq.*, by "failing to provide fair, reasonable, or adequate data security in connection with the sale of products and services in order to safeguard Plaintiffs' and Class Members' PII." *Id.* ¶ 254. Neither of these theories require a factual basis that sounds in fraud.[9] Defendants base most of their particularity argument on a theory that the heightened pleading

[9] Though Defendants note that, at other points in the 1AC, Plaintiffs allege fraudulent conduct—*see, e.g.*, *id.* ¶¶ 379–80, 384–85—none of those allegations form the basis for Plaintiffs' unlawful activity *UCL* claim.

standard applies. *See* HT Reply at 21; Robling MTD at 11. To that end, as this Court finds that the heightened pleading standard does *not* apply—as the relevant alleged conduct is not premised on fraudulent conduct—Defendants' arguments are unavailing.

Robling makes several additional related arguments in favor of dismissing the UCL claim.[10] Robling MTD at 11–12. First, Robling argues that "Plaintiffs claim that they had a customer relationship with Hot Topic and/or Torrid, not Robling." *Id.* at 11. But it cites no authority to suggest that a customer relationship is required for a plaintiff to have standing for UCL violations, or that it is impermissible as a matter of law to sue under the UCL absent a preexisting contractual relationship. Second, it argues that Plaintiffs "do not even allege that they were aware of Robling's existence when purchasing from Hot Topic and/or Torrid." *Id.* Again, Robling cites no authority for the curious proposition that a plaintiff must have been aware of a defendant before an action arose in order to sue. So this Court declines to adopt this reasoning. Third, Robling states that "Plaintiffs do not allege any implied contract with Robling (nor can they), thus defeating their ability to rely on the 'unlawful' prong of any potential CUCL claim, and, as stated above, fail to allege facts sufficient to sustain any claim that Robling failed to implement reasonable and appropriate data security measures." *Id.* at 12. As to the implied contract argument, it is unclear how the lack of an alleged implied contract between Plaintiffs and Robling would necessarily defeat the UCL claim. After all, Plaintiffs do not allege that it is their breach of implied contract claim that forms the basis for their UCL unlawful activity claim. And, as for the claim that Plaintiffs have insufficiently alleged that Robling failed to implement reasonable and appropriate data security protocols, this Court has already explained that Plaintiffs' allegations suffice. *See* Section III(D)(1) *supra*.

Therefore, Plaintiffs have sufficiently alleged the UCL claim under the unlawfulness prong.

b. Unfair prong

Second, the UCL claim for unlawful activity—against Hot Topic, Torrid, and Robling—is sufficiently stated. The 1AC alleges that the basis for this claim is "Defendants' acts, omissions, and

---

[10] This Court does not repeat its analysis of arguments that have already been addressed (particularly on standing and group pleading).

conduct, as alleged herein, offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and other Class Members." 1AC ¶ 361. And Plaintiffs note that "Defendants' failure to utilize, and to disclose that they do not utilize industry standard practices, constitutes an unfair business practice under the UCL." *Id.* ¶ 362. Hot Topic and Torrid's MTD argues that these allegations are of "misrepresent[ation]," and therefore sound in fraud. HT MTD at 31 & nn. 5–6. But this Court does not read the allegations to necessitate fraud. There is no state of mind suggested in the allegations that support the unfair prong of the UCL claim, so the allegations can just as easily be read to suggest negligent misrepresentation, not a fraudulent scheme. The allegations certainly do not meet the standard of alleging "a *unified* course of fraudulent conduct and rel[ying] *entirely* on that course of conduct as the basis of a claim." *Vess*, 317 F.3d at 1103–04 (9th Cir. 2003) (emphasis added). To that end, this Court does not find that the heightened pleading standard of Rule 9(b) controls the disposition of this prong of the UCL claim. As no defendant raises any further arguments as to this prong (beyond those that this Court addressed in the preceding section), Plaintiffs have sufficiently alleged the UCL claim under the unlawfulness prong.

c. Fraudulent prong

Third, the UCL claim for fraudulent activity—against Hot Topic, Torrid, and Robling—is subject to the heightened Rule 9(b) pleading standard. To that end, it is not sufficiently pleaded.

The 1AC states that this prong of the UCL claim is based on Defendants' "fail[ure] to disclose that they do not enlist industry-standard security practices," which was information that Defendants "withh[eld] . . . about their security practices." 1AC ¶ 363–64. This, Plaintiffs state, allowed Defendants "to obtain customers who provided and entrusted their Personal Information in connection with transacting business with Defendants." *Id.* ¶ 364. Under this prong, the 1AC alleges that Defendants "acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and Class Members' rights." *Id.* ¶ 370. Here, the allegations appear to be based upon a theory of Defendants' intentional concealment of relevant information about the deficiencies in their data security measures. For that reason, it appears to this Court that the allegations under this prong sound in fraud. Plaintiffs, moreover, appear to

concede that this is the case. HT Opp. at 21 n.4 (noting that "Rule 9(b) applies only to the fraud prong").

The 1AC's statement of the "UCL-violative practices" that serve as fraudulent conduct—Defendants' "fail[ure] to disclose that they do not enlist industry-standard security practices," and their "withholding material information about their security practices"—suggest a fraudulent omission theory. 1AC ¶¶ 363–64. Some district courts have found that Rule 9(b)'s standard is "somewhat relaxed" when applied to fraudulent omission cases. *See, e.g.*, *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013). This makes sense, as "a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act." *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987). Still, the 1AC must "establish a plausible method of disclosure" of the alleged fraudulent omissions, and "establish that [Plaintiffs] would have been aware of information disclosed using that method." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015). But the 1AC does not appear to establish how the omissions should have been disclosed. Nor does it allege that, if that disclosure plan were followed, Plaintiffs would have been on notice of Defendants' practices. For that reason, construing Plaintiffs' UCL claim as one for fraudulent omission, this portion of the 1AC fails to state a claim.

In Opposition, Plaintiffs appear to take a different direction—arguing that they have pleaded *affirmative conduct* that counts as fraudulent under the UCL. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or malice." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a pleading must identify "the who, what, when, where, and how of the misconduct charged," as well as "what is false or misleading about a statement, and why it is false." *U.S. ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted). The Ninth Circuit has interpreted this to preclude allegations that "identif[y] a general sort of fraudulent conduct but specif[y] no particular circumstances of any discrete fraudulent statement." *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1057 (9th Cir. 2011). Moreover, "a consumer suing a business under the 'fraud' prong of the UCL must show actual reliance on the alleged misrepresentation, rather than a mere factual nexus between the business's conduct and the

consumer's inquiry." *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 687 (Cal. Ct. App. 2010) (citing *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009)).

Plaintiffs, in support, reference a list of statements that each Defendant is alleged to have made. These include Hot Topic's representations that (1) it conducts vendor due diligence, (2) safeguarding personal information is one of its top priorities, (3) it monitors its systems to ensure that customers' data is protected, and (4) it promised to provide customers with breach notice as required by law. HT Opp. at 21. (citing 1AC ¶¶ 122–24). They also include Torrid's representations that (5) it "follow[s] generally accepted industry standards to protect the personal information provided to Torrid" and (6) it employs reasonable technical, organizational, administrative, and physical measures to protect personal information." *Id.* (citing 1AC ¶ 125). The Opposition to Robling's MTD does not direct this Court to any statements that Robling made that could the basis of an affirmative fraudulent misrepresentation claim.

But these allegations do not suffice to state a claim for fraudulent misrepresentation as Plaintiffs have described it. First, as Plaintiffs do not cite a relevant statement of Robling's, the 1AC lacks particularity as to Robling's allegedly fraudulent conduct. Second, as to Torrid and Hot Topic, Plaintiffs do not seem to allege that most of the statements are false; for example, it is not clear that the 1AC maintains that Hot Topic does not conduct vendor due diligence, or that it does not prioritize safeguarding personal information. Third, only one of the statements—(5), Torrid's representation that it follows generally accepted industry standards to protect personal information provided to it—is supports Plaintiffs' theory of fraudulent conduct violations of the UCL, which is that Defendants did not disclose that they do not follow industry-standard practices. The other statements from Defendants cited in the 1AC are not relevant to Plaintiffs' theory of harm under the fraudulent prong of the UCL, nor do they seem to be factually disputed. To that end, only the claim against Torrid has been adequately pleaded under the fraudulent-conduct UCL prong.

Because of this, the 1AC's statement of a fraud-based claim under the UCL against both Hot Topic and Robling falls short. Because there is no relevant asserted misrepresentation cited as to either of these two Defendants, the claims resemble what the Ninth Circuit in *Cafasso* said "is precisely what Rule 9(b) aims to preclude." 647 F.3d at 1057. Therefore, because the fraudulent

prong of the UCL claim does not sufficiently state a claim under these standards, Plaintiffs have stated a claim against Torrid, but not against Hot Topic or Robling.

In sum, Plaintiffs have sufficiently alleged standing and that their available remedies at law are inadequate. And Plaintiffs' allegations are sufficient to serve as the foundation of the unlawful-conduct and unfair-conduct prongs of the UCL—but cannot, applying the Rule 9(b) standard, suffice to allege fraudulent conduct.

The Motion as to the UCL claim, therefore, is GRANTED IN PART insofar as it alleges fraudulent conduct of Hot Topic and Robling. To the extent that the Motion is granted, dismissal is with leave to amend.

vii. <u>Plaintiffs have stated a claim for injunctive relief under the CLRA against Hot Topic and Torrid.</u>

Defendants next challenge Plaintiffs' claim under the CLRA, which prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a). The CLRA allows suits by a "consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [the CLRA]." Cal. Civ. Code § 1780. "The statute requires that plaintiffs in a CLRA action show not only that a defendant's conduct was deceptive but that the deception caused them harm." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011). Defendants' argument is threefold: First, as a threshold matter, they argue that Plaintiffs all failed to provide the mandatory advance notice to Defendants of this action. HT MTD at 33. Second, they argue that Plaintiffs have not plausibly alleged actual reliance on a representation by Defendants. *Id*. at 32. Third, they argue that there was no qualifying transaction between Plaintiffs and each Defendant that could give rise to a CLRA claim. *Id.* For the reasons below, this Court finds that Plaintiffs failed to give sufficient notice—precluding them from recovering damages on this claim, but permitting them to seek injunctive relief. And, because Plaintiffs have plausibly alleged actual reliance and a qualifying transaction, this Court does not dismiss the request for injunctive relief.

First, Plaintiffs failed to give sufficient notice prior to bringing the CLRA claim. "Thirty days or more prior to the commencement of an action for damages" under the CLRA, a consumer plaintiff

must "[n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the particular alleged violations of Section 1770," and "[d]emand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." Cal. Civ. Code § 1782(a). In the Opposition, Plaintiffs allege that Plaintiff Parra provided notice of the CLRA claim on December 5, 2024. HT Opp. at 23. But this does not suffice for several reasons. First, the notice that Plaintiffs appear to reference is only alleged to be a "CCPA notice" in the 1AC, so it is not clear that it satisfies the statutory requirements of a CLRA notice. 1AC ¶ 332; *see also* HT MTD at 33. Second, it appears that Parra also commenced her action against Defendants on December 5, 2024—on the same day notice was given. *See* Complaint, *Candace Parra v. Hot Topic*, Case No. 2:24-cv-10488-SPG-AJR, Dkt. No. 1. Plaintiffs argue that this notice is sufficient because it "was provided at least 234 days prior to the filing of the [1AC]." HT Opp. at 23. But this argument, for which Plaintiffs cite no authority, is plainly at odds with the requirement that notice be given "[t]hirty days or more prior to *the commencement of an action for damages*." Cal. Civ. Code § 1782(a) (emphasis added). Nor does it appear that any other Plaintiff gave notice, or that any Plaintiff gave any notice to Robling. Robling MTD at 10. For these reasons, sufficient notice was not given to Defendants, Plaintiffs' request for monetary damages under this claim is denied.

Second, Plaintiffs have sufficiently alleged actual reliance on statements by Hot Topic and Torrid, but not Robling. As this Court has discussed above, Plaintiffs appear to have pleaded specific wrongful representations that Hot Topic and Torrid both made. *See* 1AC ¶¶ 122–25. And the 1AC alleges that "Plaintiffs . . . , as current and former customers of Hot Topic and/or Torrid, relied on these promises when making purchases from and otherwise providing their PII to Hot Topic and Torrid." *Id.* ¶ 126. Hot Topic and Torrid argue that the heightened pleading standard precludes Plaintiffs from sufficiently stating their claim. *See* HT Reply at 25. But this Court has already explained that Plaintiffs have sufficiently pleaded these statements as fraudulent under Rule 9(b)'s heightened standard.

Third, Plaintiffs have alleged qualifying transactions with Hot Topic and Torrid. The CLRA applies only to acts "in a transaction intended to result or that results in the sale or lease of goods or

services." Cal. Civ. Code § 1770(a). Hot Topic and Torrid argue that Plaintiffs "vaguely assert that they purchased products but provide no other details that demonstrate deception during a qualifying transaction." HT Reply at 25. Plaintiffs do appear to have alleged that they gave their PII to Hot Topic and Robling as a necessary part of making purchases of goods and services at Hot Topic and Robling. *See* 1AC ¶ 126, 283. These appear to this Court to qualify as a transaction covered within the ambit of the CLRA. Taking the allegations as true, Plaintiffs were required to provide their PII to Hot Topic and Torrid "[a]s a condition of purchasing products from Hot Topic and Torrid." *See id.* ¶ 45. To that end, as Plaintiffs note, their allegations are effectively that Plaintiffs gave both financial payment and PII to Defendants in exchange for being able to purchase goods. HT Opp. at 23. Given that the transactions appear to be the basis for the fraudulent conduct, it appears to the Court that the Plaintiffs must meet the heightened pleading standard by at the very least identifying specific transactions.

In conclusion, Plaintiffs' request for damages under this claim is insufficiently pleaded, because Plaintiffs do not appear to have met the CLRA's notice requirement or alleged the details of qualifying transactions. Further, Plaintiffs have not sufficiently alleged actual reliance on a representation made by Robling. To that end, the Motion is granted as to this claim (against Robling) and as to this claim's request for monetary damages (against Hot Topic and Torrid).

viii. Plaintiffs have not sufficiently stated a claim for unjust enrichment.

Plaintiffs allege an unjust enrichment claim against all Defendants. 1AC ¶¶ 394–405. Plaintiffs allege that they conferred a monetary benefit on Defendants, by paying for retail products and/or services and providing Defendants with their PII. *Id.* ¶ 395. In exchange, Plaintiffs argue, they should have received "the products and/or services that were the subject of the transaction," as well as having "their PII protected with adequate data security." *Id.* But, as they allege Defendants failed to secure Plaintiff's PII, Defendants "did not fully compensate Plaintiffs or Class Members for the value that their PII provided." *Id.* ¶ 397. For the reasons below, this Court finds that this claim is not sufficiently pleaded, and therefore grants the Motion as to this claim.

"Some California courts allow a plaintiff to state a cause of action for unjust enrichment, while others have maintained that California has no such cause of action." *ESG Cap. Partners, LP v.*

*Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016). "While California case law appears unsettled on the availability of such a cause of action, [the Ninth] Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *Id.* An action for "unjust enrichment, which is synonymous with restitution," may be construed as "a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). But "[a] plaintiff may not . . . pursue or recover on a quasi-contract if the parties have an enforceable agreement regarding a particular subject matter." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330 (Cal. Ct. App. 2012). As such, a plaintiff may not "plead[] the existence of an enforceable agreement and [simultaneously make an] unjust enrichment claim [that] does not deny the existence or enforceability of that agreement." *Astiana*, 783 F.3d at 762.

That is precisely what Plaintiffs' 1AC does, in bringing an unjust enrichment claim against Hot Topic and Torrid. Though this Court understands that California law is not settled as to whether a plaintiff can bring a claim for unjust enrichment, it need not resolve that dispute at this time. This is because, even accepting Plaintiffs' argument that they may bring this action as a quasi-contract action, the claim fails: Plaintiffs separately argue that a valid, enforceable contract existed between them and Hot Topic and Torrid. *See* 1AC ¶¶ 282–301. And, in setting out their unjust enrichment claim, Plaintiffs do not clarify that the unjust enrichment claim is made in the alternative of the breach of implied contract claim, or that the contract is plausibly unenforceable. To that end, as Plaintiffs have already stated a claim for breach of implied contract against Hot Topic and Torrid, quasi-contract restitution damages are not available to Plaintiffs.

For separate reasons, the unjust enrichment claim against Robling fails. Here, Plaintiffs' allegations are overly general and conclusory: They allege that "Defendants knew that Plaintiffs . . . had conferred a benefit upon them" by purchasing items from Hot Topic and Torrid. *Id.* ¶¶ 395–96. But here, the pleadings are not sufficiently clear as to what benefit Robling is alleged to have received in exchange for Plaintiffs purchasing items from Hot Topic or Torrid. After all, it does not appear that Plaintiffs entered sales or other contractual agreements between themselves and Robling. Indeed, at this part of the complaint, Plaintiffs' group pleading becomes too pervasive to fairly give

Robling notice of the allegations against it. In sum, because it is not clear what benefit (if any) Plaintiffs conferred upon Robling specifically, this claim is not sufficiently stated.

In sum, because Plaintiffs impermissibly seek both contract and quasi-contract damages against Hot Topic and Torrid, and because Plaintiffs only conclusorily allege that they conferred upon Robling a benefit in providing Robling their PII, the Motion is granted as to this claim.

ix. Plaintiffs have sufficiently stated a claim for declaratory and injunctive relief.

Lastly, this Court considers whether Plaintiffs have sufficiently alleged that they are entitled to declaratory and injunctive relief. For the reasons below, this Court finds that the 1AC suffices as to this claim.

This claim is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, and seeks declaratory judgment stating that:

> Defendants owed, and continue to owe, legal duties to employ reasonable data security to secure the PII they possess, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;
>
> Defendants breached, and continue to breach, their duties by failing to employ reasonable measures to secure their customers' personal and financial information; and
>
> Defendants' breach of their duties continue to cause harm to Plaintiffs and the Class.

1AC ¶ 409. Plaintiffs also ask this Court to "issue corresponding injunctive relief requiring Defendants to employ adequate security protocols consistent with industry standards." *Id.* ¶ 410.

"To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014) (internal quotation marks omitted).

Hot Topic and Torrid argue that this claim "fails because declaratory relief and injunctive relief are remedies and cannot be brought as an independent cause of action." HT MTD at 34. But, as Plaintiffs' Opposition points out, the fact that declaratory relief and injunctive relief are remedies

does not necessarily mean that these forms of relief cannot be sought under the Declaratory Judgment Act. Indeed, such a read would be plainly inconsistent with the Act's intended "[c]reation of [a] remedy." 28 U.S.C. § 2201. Further, Plaintiffs have alleged that they face ongoing harm through the continued unlawful storage of Plaintiffs' PII in Defendants' possession. 1AC ¶ 408. To that end, it appears to this Court that they have plausibly alleged facts supporting injunctive and declaratory relief.

Robling, similarly, argues that the claim is "needlessly duplicative of the damages or relief requested under the substantive claims," which are "independently insufficient as a matter of law." Robling MTD at 13. But this Court does not find the relief sought under this heading duplicative; as Hot Topic and Torrid's Motion argues, the Declaratory Judgment Act does not confer new substantive rights, it only expands upon the available forms of relief for litigants. So this Court reads this heading as further explanation of Plaintiffs' requests for injunctive and declaratory relief under the other causes of action, not as an independent, duplicative request.

In sum, because this Court understands "Count IX" as an explanation of why Plaintiffs are entitled to declaratory and injunctive relief under their other substantive claims—not as a second independent, duplicative request—and because Plaintiffs have plausibly alleged ongoing harm, the Motion is denied on this basis.

x. Dismissal with leave to amend is warranted.

Defendants argue that the Complaint should be dismissed with prejudice. HT MTD at 10; Robling MTD at 5. They argue that this is warranted because, despite "having had three prior opportunities to plead viable claims, Plaintiffs still do not offer well-pled facts showing that Defendants engaged in any wrongdoing, nor do they allege any actual, individualized injury sufficient to confer Article III standing." HT MTD at 10. Moreover, they argue "these exact pleading deficiencies were detailed in Defendants' prior motion to dismiss, and Plaintiffs were unable to cure them." *Id.*

In general, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Defendants have not met this exacting standard; they do not explain the allegation that the 1AC is Plaintiffs' fourth attempt to state claims, and this is the first motion to dismiss that this Court has adjudicated in this matter. Nor do Defendants explain why all of Plaintiffs' proposed amendments would necessarily be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). To that end, this Court finds that—to the extent it partially grants the Motion—leave to amend is warranted.

At the hearing, Defendants asked this Court to dismiss the CCPA, CCRA, and CLRA damages claims *with* prejudice. They reasoned that, because Plaintiffs failed to give the requisite notice before bringing these claims, amendment would be futile. In opposition, Plaintiffs requested that this Court dismiss the claims *without* prejudice—noting the possibility that adequate notice could be given, or that a plaintiff that gave adequate notice could be joined. *Morgan v. AT&T Wireless Services, Inc.*, which Plaintiffs cited at the hearing, is instructive. 99 Cal. Rptr. 3d 768, 789 (Ct. App. 2009). There, the Court noted that the notice requirement exists for "a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30–day period that it will correct those wrongs." *Id.* at 789. "A dismissal with prejudice of a damages claim filed without the requisite notice is not required to satisfy this purpose. Instead, the claim must simply be dismissed until 30 days or more after the plaintiff complies with the notice requirements." *Id.* At the hearing, Plaintiffs represented that they would seek to cure the defect with their lack of notice. To that end, as California law allows for the notice requirement to be met after the commencement of an action, but before an operative pleading is filed, this Court will allow leave to amend.

Relatedly, at the hearing, Plaintiffs requested that this Court grant them forty-five days to amend, instead of thirty. They noted that, given the thirty-day notice period under the applicable

California laws, this would enable them to explore the possibility of curing the defects with notice given to Defendants. This request is granted.

## IV. Conclusion

The Court orders as follows:

1. The Motions are GRANTED as to Count III, invasion of privacy. Dismissal is with leave to amend.
2. The Motions are GRANTED as to Count IV, violation of the California Consumer Privacy Act. Dismissal is with leave to amend.
3. The Motions are GRANTED as to Count V, violation of the California Consumer Records Act. Dismissal is with leave to amend.
4. The Motions are GRANTED as to Count VI, violation of the California Unfair Competition Law, insofar as Plaintiffs alleged a cause of action under the fraudulent-conduct prong against Hot Topic and Robling. Dismissal is with leave to amend.
5. The Motions are GRANTED as to Count VII, violation of the Consumer Legal Remedies Act, against Robling (generally) and against Hot Topic and Torrid (for monetary damages). Dismissal is with leave to amend.
6. The Motions are GRANTED as to Count VIII, unjust enrichment. Dismissal is with leave to amend.
7. As to all other grounds, the Motions are DENIED.
8. Any amendment to the Complaint, within the scope of the leave to amend granted in this Order, must be made within **forty-five (45) days** of the date of this Order. Should Plaintiffs fail to file a further amended complaint, the only claims that shall remain are those not dismissed by this Order, and the operative filing date for the Defendants' responses shall be the forty-five-day date upon which the further amended complaint should have been filed.

/ / /

/ / /

/ / /

9. The Court will issue an Order Setting Scheduling Conference forthwith.

IT IS SO ORDERED.



Dated: September 30, 2026

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge